IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LASHAWN SUMPTER, | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | |
| | ) | 07-CV-2586-CAM-ECS |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MICHAEL B. MUKASEY, | ) | |
| ATTORNEY GENERAL OF U.S. | ) | |
| DEPARTMENT OF JUSTICE, and | ) | |
| HARLEY G. LAPPIN, DIRECTOR, | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I.      INTRODUCTION

Plaintiff, Lashawn Sumpter ("Plaintiff" or "Ms. Sumpter") filed her complaint on October 17, 2007, alleging unlawful conduct during her employment as a Correctional Officer at the United States Penitentiary in Atlanta, Georgia. (Doc. 1).  Plaintiff's claims include gender-based discrimination (hostile work

environment/sexual harassment) and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as amended by the Civil Rights Act of 1991 and 42 U.S.C. § 1981a.  Although Plaintiff brought claims under Georgia law including negligent and reckless failure to provide a safe work environment; negligent hiring, retention, and supervision; and intentional infliction of emotional distress, Plaintiff is no longer pursuing her state law claims and hereby dismisses those claims.  (Id.)  Defendants filed a motion for summary judgment on July 14, 2008.  (Doc. 15).

Defendants based their summary judgment motion on the following factual and legal grounds:

(1)     Ms. Sumpter's "hostile work environment/sexual harassment" claim fails because of Defendants' assertion of the *Faragher-Ellerth* affirmative defense.[1]  (Doc. 15, p. 2).

(2)     Ms. Sumpter's retaliation claim fails because she lacks either an adverse employment action or a causal connection between her protected expression and any adverse employment action. (Doc. 15, p. 2).

---

[1] *See* discussion of this defense *infra*.

(3)      All of Ms. Sumpter's state law tort claims fail because she failed to exhaust administrative remedies as required by the Federal Tort Claims Act ("FTCA"), which Defendants state is the exclusive remedy for her tort claims.   (Doc. 15, p. 2) (which Plaintiff concedes).

(4)      All of Ms. Sumpter's state law tort claims also fail because torts that arise out of an employment relationship are jurisdictionally preempted by Title VII.   (Doc. 15-2, p. 2) (which Plaintiff concedes).

## II.   STATEMENT OF FACTS

Plaintiff incorporates her statement of facts.

## III.   ARGUMENT AND CITATION OF AUTHORITY

Applying the Eleventh Circuit's standards to the facts of this case leads to one conclusion:  Plaintiff's case deserves to be heard on the merits by a jury of her peers, and thus Defendants' summary judgment motion must be denied.

### A.   <u>Summary Judgment Standard of Review</u>

Summary judgment should be rendered only when the pleadings, depositions, and discovery show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  On a motion for summary judgment filed by the defendant, all the evidence presented must be construed in favor of the plaintiff, and all reasonable doubts and inferences to be drawn from the underlying facts must be viewed in the light most favorable to the plaintiff.  Hinson v. Clinch County, Ga. Bd. of Educ., 231 F.3d 821, 826-27 (11th Cir. 2000); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1529 (11th Cir. 1997); Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 918 (11th Cir. 1993).  As the U.S. Supreme Court has stated, "The judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  "Where a reasonable fact finder may draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." Hairston, 9 F.3d at 919 (internal citations omitted).

One who moves for summary judgment is not entitled to a judgment merely because the facts the movant offers appear more plausible than those tendered in opposition or because it appears that the adversary is unlikely to prevail at trial. Hayden v. First National Bank, 595 F.2d 994, 997 (5th Cir. 1979). Doubts about

the facts and alternate inferences drawn from the facts require a denial of summary judgment. Id.; Coleman v. Hertz Corp., 575 F. Supp. 1458, (N.D. Ga. 1983). If the court finds factual issues, it should deny the motion without deciding them. Brooks v. Blue Cross & Blue Shield of Florida, Inc.,116 F.3d 1364, 1369 (11th Cir. 1997).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" ruling on a motion for summary judgment.  Id. at 255.

B.   Genuine Issues of Fact Remain as to Plaintiff's Claim of Gender-Based Discrimination

1.  Plaintiff has established a sexual harassment claim.

"To prove sexual harassment in violation of Title VII, a plaintiff may rely on one of two theories.  Under the first theory, the plaintiff must prove that the harassment culminated in a 'tangible employment action' against her.  Under the second or 'hostile work environment' theory, the plaintiff must prove that she suffered 'severe or pervasive conduct.'"  Cotton v. Cracker Barrel Old Country

Store, Inc., 434 F.3d 1227, 1231 (11th Cir. 2006).  When a supervisor is the alleged harasser, the employee may claim either type of harassment.  Johnson v. Booker T. Washington Broadcasting Service, Inc., 234 F.3d 501, 508 (11th Cir. 2000).  Ms. Sumpter is able to establish sexual harassment on the basis of both theories.

To establish a *prima facie* case of "tangible employment action" theory sexual harassment, a plaintiff must show that (1) she belongs to a protected group; (2) she has been subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) she suffered a tangible employment action; and (5) there is a "causal link" between the tangible employment action and the harassment. Cotton, 434 F.3d at 1231.

Hostile work environment sexual harassment occurs when an employer's conduct has "the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment." Steele v. Offshore Shipbuilding, 867 F.2d 1311, 1315 (11th Cir. 1989).  To make a *prima facie* case of hostile work environment sexual harassment, Ms. Sumpter must establish that (1) she belongs to a protected group; (2) she has been subject to "unwelcome sexual harassment, such as sexual advances, requests for sexual conduct, and other conduct of a sexual nature;" (3) the harassment was based on

her sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) there is a basis for holding the employer liable.  Johnson, 234 F.3d at 508.

Defendants' summary judgment motion does not challenge Ms. Sumpter's establishment of the first three elements of her sexual harassment/hostile work environment claim.  Defendants rather ask this Court to determine that, as a matter of law, the harassment was not sufficiently "severe and pervasive" (a misstatement of the law), and that there is no basis for holding Defendants liable.  *See* Doc. 15-2, p. 10.  Defendants apparently addresses the first type of sexual harassment solely by claiming that Ms. Sumpter did not suffer a tangible employment action.  *See* Doc. 15-2, p. 15.

      a.           <u>Conduct need not be "sexual" to be "based on sex" and constitute gender-based hostile work environment harassment</u>.

Defendants find it dispositive that some of the unwelcome conduct to which Ms. Sumpter and other female employees were subjected was "not sexual."  *See* Doc. 15-2, p. 5.  Yet conduct does not have to be "sexual" to constitute gender-based harassment.  *See* <u>O'Rourke v. City of Providence</u>, 235 F.3d 713, 729 (1st

Cir.2001) (noting that "sex-based harassment that is not overtly sexual is nonetheless actionable under Title VII"); *see also* Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)("harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex"). Indeed, "incidents of nonsexual conduct – such as work sabotage, exclusion, denial of support, and humiliation – can in context contribute to a hostile work environment." O'Rourke, 235 F.3d at 730.  To satisfy the "based on element," a plaintiff must essentially show that similarly-situated persons not of her sex were treated differently and better."  Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1302 (11th Cir. 2007), Mendoza, 195 F.3d at 1254 n.3 (Edmondson, J., concurring**)**.  In hostile environment cases, the courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive. Mendoza 1246.)

Lt. Jemison did in fact make advances towards Ms. Sumpter that were sexual.  He said things like, "if you were not married, the things I would do to you." (Ex. A. Para. 2.)  "Your husband better watch out." (Ex. A. Para. 2).  "You smell good." (Ex. A. Para. 2).  Jemison would approach Ms. Sumpter, get very

close to her, make a point of sniffing her and talk about how she smells and say, "I wonder if you smell like that everywhere." (Ex. A. Para. 3). Jemison touched Ms. Sumpter and ran his hand through her hair. (Exhibit A. Para. 11.) Ms. Sumpter was married with children. (Ex. A. Para. 5). Lt. Jemison was Ms. Sumpter's supervisor (Ex. A. Para. 1) and there would be no legitimate, non-sexual, reason for Jemison to tell Ms. Sumpter about the things he would do to her if she wasn't married. Getting very close to her, "in my space" (Ex. A. Para. 3), and sniffing her and talking about how she smells "everywhere" provides the basis for a jury to conclude that Jemison's conduct was motivated by sexual desire.

      b.        <u>Material fact issues remain as to whether the harassment was sufficiently severe or pervasive to establish a gender-based hostile work environment claim</u>.

     Harassment is severe or pervasive for Title VII purposes if it is subjectively and objectively severe or pervasive (*i.e.*, both the employee and a reasonable person would consider it so). <u>Johnson v. Booker T. Washington Broadcasting Service, Inc.</u>, 234 F.3d 501, 509 (11th Cir. 2000). Factors of severity or pervasiveness include frequency of the conduct, severity of the conduct, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee's job performance. <u>Id</u>. "When the

conduct in question is that of a supervisor, even isolated instances may more clearly rise to the level of actionable harassment."  Bryant v. Jones, 464 F.Supp.2d 1273, 1301 (N.D. Ga. 2006) (internal citations omitted) (Duffey, J.).

In asking this Court to determine, as a matter of law, that Lt. Jemison's conduct towards her is not actionable, Defendants cite cases from other circuits and Mendoza v. Borden, 195 F.3d 1238 (11th Cir. 1999) in which conduct "as serious or more serious than the conduct described in Plaintiff's allegations" was found not to constitute actionable sexual harassment.  *See*  Doc. 15-2, pp. 12-13.  Yet courts have permitted harassment claims to proceed to trial by distinguishing Mendoza. See, e.g., Johnson v. Booker T. Washington Broadcasting Servs., Inc., 234 F.3d 501, 509 (11th Cir. 2000) (distinguishing Mendoza as having "fewer instances of less objectionable conduct over longer periods of time" as compared with a "continuous barrage of sexual harassment"); Bryant v. Jones, 464 F.Supp.2d 1273, 1301 (N.D. Ga. 2006) (distinguishing Mendoza as involving acts that were "isolated over several years" and did not sufficiently alter the terms and conditions of the plaintiff's job).

When Lt. Jemison began sexually harassing Ms. Sumpter, he made advances towards her on a constant, daily basis.  (Ex. A. Para. 3).  Ms. Sumpter was working

as a correctional officer in a federal prison.  (Ex. A. Para. 6).  She was a new employee and still on probationary status.  (Ex. A. Para. 9).  Because he was her supervisor, she was afraid to complain about him.  (Ex. A. Para. 9).  The institution had an announced policy of "zero tolerance" towards sexual harassment.  (Ex. A. Para. 7).  Safety is a critical issue working with incarcerated criminals in the prison and deviation from procedures endangers safety.  (Ex. A. Para. 6).  If there was an emergency in her area, Ms. Sumpter would have to rely on Lt. Jemison is who Ms. Sumpter would have to rely on for help.  (Ex. A. Para. 45.)  After Ms. Sumpter complained about Lt. Jemison's sexual advances and harassment, Jemison refused to allow Ms. Sumpter to have a lunch relief.  (Ex. A. Para. 14).  Ms. Sumpter was entitled to a lunch break during her workday (Ex. A. Para. 14) and Ms. Sumpter considers the lunch break an important part of her work day because it provided her with a time to eat and to rest.  (Ex. A. Para. 15).  Sumpter was denied a lunch relief for nearly an entire quarter.  (Ex. A. Para. 16).  Lt. Jemison swore at Ms. Sumpter and said, "don't fucking call me for a lunch relief." Lt. Jemison did not yell or swear at Ms. Sumpter before she refused his sexual advances.  (Ex. A. Para. 14.) For nearly an entire quarter, Ms. Sumpter was caused additional stress and

worry by not having lunch relief, which jeopardized her safety and denied her a tangible benefit of her job.  (Ex. A. Para. 15).

Lt. Jemison humiliated and jeopardized Ms. Sumpter's safety in other ways. In early 2006, Ms. Sumpter had a cast on her foot and was to have a job where she didn't need to do much walking.  Jemison attempted to put her into an inmate housing unit to work a job that required a lot of walking and caused her additional stress.  (Ex. A. Para. 18.)  On another occasion, Ms. Sumpter was working an outside post.  The policy of the institution is to provide rain gear to officers working outside during inclement weather.  Jemison had seen Ms. Sumpter on the outside post.  It was raining and Ms. Sumpter had not been provided with rain gear. She had received permission to stand in a heated building.  Jemison told Ms. Sumpter's supervisor at the time, Mr. Hodge, to order Ms. Sumpter to stand outside during a thunderstorm without rain gear, and Mr. Hodge did order her to stand outside.  (Ex. A. Para. 33).

Ms. Sumpter complained in writing about sexual harassment to Warden Zenk in April 2006.  (Ex. A. Para. 25).  Even though the policy of the institution is for the warden to immediately report complaints of sexual harassment to the Office of Internal Affairs, the warden did not contact OIA about the report for 11 months,

March of 2007.  (Ex. A. Para. 26, 27.)  (also cite the Warden's own affidavit.)

During the entire time between between her written complaind and when OIA

started investigating her complaint, Ms. Sumpter still had to endure the sexual

harassment and retaliation.  (Ex. A. Para. 29).

The harassment of Ms. Sumpter was severe <u>and</u> pervasive. (Even though she

only needs to prove that the conduct was severe or pervasive.)   The extended

amount of time that the harassment was happening exceeds the facts in <u>Mendoza</u>.

The cruelty of the harassment exceeds the facts of <u>Mendoza</u>.  The danger inherent

in the work situation also exacerbates the harassment and exceeds the facts of

<u>Mendoza</u>.   A reasonable jury could conclude that Lt. Jemison sexually harassed

Ms. Sumpter and that the harassment was severe or pervasive.

c.        The *Faragher-Ellerth* <u>defense is unavailable to Defendants to</u>
<u>the extent that Lt. Jemison's sexual harassment resulted in</u>
<u>tangible employment action</u>.

The *Faragher-Ellerth* affirmative defense is unavailable when a supervisor's

harassment culminates in a tangible employment action.  <u>Faragher v. City of Boca</u>

<u>Raton</u>, 524 U.S. 775, 808 (1998).   After she rejected Lt. Jemison's sexual

advances, he stopped giving her overtime assignments.  Ms. Sumpter was qualified

for receiving overtime assignments.  Ex. A. Para. 35.  She requested overtime and

was granted overtime before she rejected Lt. Jemison's sexual advances.  (Ex. A. Para. 37.)  Overtime was assigned by the lieutenants.  (Ex. A. Para. 36).  After Ms. Sumpter rejected Jemison's advances, she applied for overtime and was denied overtime for several months.  (Ex. A. Para. 38.)  The lieutenants used a sign up sheet to determine overtime assignments.  (Ex. A. Para. 39).

The denial of overtime hours is a tangible employment action, it is a direct reduction of wages in response to retaliation for refusal to give in to the sexual advances of her supervisor.  Denial of overtime obviously resulted in a tangible financial detriment to Ms. Sumpter.  Thus, if a jury determines that Lt. Jemison subjected Ms. Sumpter to sexual harassment, based on sexual or otherwise gender-based conduct, that resulted in tangible employment action, Defendants will be vicariously liable for that conduct.

Defendants now allege that Lt. Jemison had no role in the determination of Ms. Sumpter's overtime assignments, which were made by computer in order of seniority after 2005.  *See* Doc. 15-2, p. 14.  In support, Defendants provide a self-serving affidavit, the veracity of which should be for the jury to determine, which alleges that assignments before 2006 were made by "the Administrative Lieutenant" and after 2006 by computer.  See Doc. 15-15 ¶10.  Defendants note

that Lt. Jemison served as Administrative Lieutenant for only three days in 2005. Doc. 15-2, p. 16.

This description of overtime assignment is contrary to Ms. Sumpter's own experience and that of others in her work group. In addition, given his close relationships with the other lieutenants, a jury could reasonably find that Lt. Jemison could have persuaded the Administrative Lieutenants to assign overtime to others.[2]

---

[2] The Eleventh Circuit has ratified the notion of cat's paw liability. This theory provides that causation may be established if the plaintiff shows that the decisionmaker followed a biased recommendation without independently investigating or evaluating the facts. In such a case, the recommender is using the decisionmaker as a mere conduit, or "cat's paw," to give effect to the recommender's discriminatory animus. *See* Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1331 (11th Cir. 1999); Llampallas v. Mini-Circuits Lab, Inc., 163 F.3d 1236, 1249-50 (11th Cir. 1998); *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000) (employer not entitled to judgment as a matter of law because petitioner had introduced additional evidence that one of petitioner's

Defendant's argument that Jemison did not have control over assigning overtime and that overtime was assigned by computer is not determinative. Even after the lieutenants began using a computer to assign overtime, they still found ways of assigning overtime without using the computerized prioritized list generated by the computer. Ms. Sumpter was not called for overtime when she was the next person on the overtime list when the person after her on the list was called for overtime. (Ex. A. Para. 40). In addition, Lt. Jemison was successful in having other lieutenants harass and retaliate against Ms. Sumpter on his behalf. (Ex. A. Para. 24, 30, 31, 33, 42, 43). Defendant has not established that overtime was assigned fairly nor has it established that Lt. Jemison did not play a role in retaliating against Ms. Sumpter.

C.   Genuine Fact Issues Remain as to Plaintiff's Retaliation Claim

A *prima facie* case of retaliation is established through: (1) statutorily protected expression, (2) adverse employment action, and (3) a causal link between

---

superiors in the chain of authority was motivated by age-based animus and was principally responsible for petitioner's firing).

the protected expression and the adverse employment action.  Gupta v. Florida Bd.
of Regents, 212 F.3d 571, 587 (11th Cir. 2000).[1]

Defendants, as the movant on summary judgment, have the initial burden to
establish the absence of a genuine issue of material fact as to every essential aspect
of Plaintiff's case and that it is entitled to judgment as a matter of law. Until
Defendants first establish the absence of a dispute on a genuine issue of material
fact, there is no burden on Plaintiff to respond at all. Jones v. City of Columbus,
120 F.3d 248, 253-54 (11th Cir. 1997); Clark v. Coats & Clark, Inc., 929 F.2d 604,
609 (11th Cir.1991).

    1.  Plaintiff engaged in protected activity.

Ms. Sumpter wrote a memorandum reporting Lt. Jemison's sexual
harassment.  She gave copies of her report to Warden Zenk, Captain Branch, and
Assistant Warden Romero on April 20, 2006.  (Ex. A. Para. 25).

---

[1] The Supreme Court's landmark case in Burlington Northern & Santa Fe Railway
Co. v. White, 126 S. Ct. 2405 (2006) did not change the elements of a *prima facie*
case, but merely sought to elaborate on what constitutes an adverse employment
action in cases not involving discharge or tangible job action. 126 S.Ct. at 2415.

2.  <u>Plaintiff suffered adverse employment action</u>.

In addition to the adverse employment action previously identified in this brief, Ms. Sumpter was denied a promotion for which she was qualified.  (Ex. A. Para. 41).  Ms. Sumpter was denied overtime hours, lunch breaks and was forced to stand guard outside during a thunderstorm without the required rain gear among other adverse employment actions.  (Ex. A. Para. 14, 16, 18,33,38).

In <u>Burlington Northern & Santa Fe Rwy. Co v. White</u>, 126 S.Ct. 2405 (2006), the U.S. Supreme Court established the standard of "seriousness" for a retaliatory act to be actionable.  126 S. Ct. at 2415.

> In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

126 S.Ct. at 2415.   The Court held that the application of this standard to a particular retaliatory action was a jury question, subject to the usual requirement that the jury's finding be "adequately supported."  126 S.Ct. at 2416.

3. <u>Plaintiff has established a causal relationship between her protected activity and the adverse employment action</u>.

The Eleventh Circuit Court of Appeals "construe[s] the causal link element broadly so that a plaintiff merely has to prove that the protected activity and the [adverse] action are not completely unrelated.'" <u>Higdon v. Jackson</u>, 393 F.3d 1211, 1220 (11th Cir. 2004) (citing <u>Olmsted v. Taco Bell Corp.</u>, 141 F.3d 1457, 1460 (11th Cir. 1998)).

Ms. Sumpter had no problems during the eight or nine months she worked for Lt. Jemison before he started making sexual advances towards him.  (Ex. A. Para. 1).  During that time, Ms. Sumpter did not have a problem with Mr. Jemison and as far as she could tell, Jemison did not have a problem with her.  (Ex. A. Para. 1).  During the time before Jemison started his sexual advances towards Ms. Sumpter, she requested overtime and was granted overtime.  (Ex. A. Para. 37). After Ms. Sumpter complained about Lt. Jemison's sexual conduct towards her, she was denied overtime.  (Ex. A. Para. 38).  All of Ms. Sumpter's problems with Jemison and his friends began only after she refused Jemison's sexual advances and reported his conduct to the Warden.  Defendant has not established the absence

of retaliation.   A reasonable jury could find that Jemison retaliated and was permitted to retaliate against Ms. Sumpter.

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' summary judgment motion.

Respectfully submitted, this 21st day of October, 2008.


/s/ Benjamin F. Barrett
Benjamin F. Barrett
Georgia Bar No. 039586
Attorney for Plaintiff

1401 Peachtree Street
Suite 101
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 facsimile
e-mail:  ben@barrettandfarahany.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LASHAWN SUMPTER, | ) | |
| | ) | Civil Action No. |
|    Plaintiff, | ) | |
| | ) | 07-CV-2586-CAM-ECS |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MICHAEL B. MUKASEY, | ) | |
| ATTORNEY GENERAL OF U.S. | ) | |
| DEPARTMENT OF JUSTICE, and | ) | |
| HARLEY G. LAPPIN, DIRECTOR, | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
|    Defendants. | ) | |
| _____ | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

> Ms. Melanie  A. Williams
> United States Attorney
> 600 Richard B. Russell Bldg.
> 75 Spring Street, SW
> Atlanta, GA  30303

This 21st day of October, 2008.

s/Benjamin F. Barrett____
Benjamin F. Barrett
Georgia Bar No. 039586
Attorney for Plaintiff